**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MARILYN KAY DMYTRYK,

                Plaintiff,

vs.                                                                                     Case No. 3:16-cv-708-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                Defendant.
_____/

## OPINION AND ORDER[2]

### I. Status

Marilyn Kay Dmytryk ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of diabetes, hypothyroidism, fibromyalgia, depression, and migraines. Transcript of Administrative Proceedings (Doc. Nos. 11-12; collectively, "Tr." or "administrative transcript"), filed August 22, 2016, at 182.[3] On April 26, 2010, Plaintiff filed applications for DIB and SSI,

---

      [1]      Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

      [2]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed August 22, 2016; Reference Order (Doc. No. 16), signed August 24, 2016 and entered August 25, 2016.

      [3]      The administrative transcript is voluminous (more than 2400 pages) and was filed as two separate documents on the Court's electronic filing system (Doc. Nos. 11-12). The pagination is continuous throughout the two documents.

alleging an onset disability date of March 29, 2010. Tr. at 151-52 (DIB), 146-50 (SSI). Plaintiff's applications were denied initially, see Tr. at 67, 69, 75-77 (DIB); 68, 70, 78-80 (SSI), and were denied upon reconsideration, see Tr. at 71, 73, 85-86 (DIB); 72, 74, 87-90 (SSI).

On February 24, 2012, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 34-66, 1229-61, 1306-38 (duplicates). Following the hearing, the ALJ issued a decision on April 16, 2012, finding Plaintiff not disabled through the date of the decision. Tr. at 13-27, 1036-50 (duplicate). The Appeals Council then accepted additional evidence in the form of a memorandum authored by Plaintiff's counsel. Tr. at 4-5, 1060-61 (duplicate); see Tr. at 280-81 (memorandum). On April 12, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, 1057-59 (duplicate), thereby making the ALJ's decision the final decision of the Commissioner.

Plaintiff appealed the final decision to this Court. See Compl. (Doc. No. 1), filed June 11, 2013, Case No. 3:13-cv-667-J-MCR.[4] On August 1, 2014, the Honorable Monte C. Richardson, United States Magistrate Judge, entered an Order reversing and remanding the Commissioner's final decision for further administrative proceedings. Tr. at 1130-32 ("Reversal Order"). The Reversal Order incorporated by reference a transcript of a pronouncement of the decision of the Court. Tr. at 1130; see Tr. at 1133-42 ("Transcript of

---

[4] Other than this one, citations to Plaintiff's prior appeal are to documents from the appeal that are included in the administrative transcript.

Pronouncement of Decision"). On August 5, 2014, Judgment entered reversing and remanding the matter to the Commissioner. Tr. at 1128.

In the meantime, while the appeal was pending in this Court, Plaintiff on June 18, 2013 filed another round of applications for DIB and SSI. Tr. at 1272-75 (DIB application), 1276-82 (SSI application),[5] 1062-76, 1093, 1158-61 (SSI initial denial explanation), 1077-91, 1092, 1154-57 (DIB initial denial explanation), 1094-1109, 1126, 1171-77 (DIB reconsideration denial explanation), 1110-1125, 1127, 1164-70 (SSI reconsideration denial explanation). On remand from this Court, the Appeals Council entered an Order on October 29, 2014 remanding the case to the ALJ and directing the ALJ to consolidate the later-filed applications with the initial applications. Tr. at 1145-46.

On April 17, 2015, the ALJ held another hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a VE. Tr. at 996-1032. At the hearing, Plaintiff amended her alleged disability onset date. Tr. at 999-1000. Plaintiff's attorney initially stated that the amended date should be March 29, 2011, which counsel believed to be "the date of a multiple sleep latency test." Tr. at 999. Then, there was a protracted and rather confusing exchange between counsel and the ALJ about the actual date of the test, during which they mentioned the possible dates of March 28, 2011, April 20, 2011, and April 12, 2011, but never settled on the intended amended onset date. Tr. at 999-1000.

On September 15, 2015, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 965-83. In the Decision, the ALJ found that Plaintiff

---

[5] The applications are actually dated July 17, 2013, see Tr. at 1272 (DIB), and July 23, 2013, see Tr. at 1276 (SSI). The protective filing date, however, is listed by the Appeals Council as June 18, 2013. Tr. at 1145.

-3-

had amended her onset disability date to March 28, 2011. Tr. at 965. No one disputes that date, so the undersigned too adopts it as the amended alleged onset disability date.

On April 22, 2016, the Appeals Council accepted additional evidence in the form of a memorandum entitled, "Exceptions to ALJ Denial of Benefits" in which Plaintiff argued that the ALJ's Decision was erroneous and should be vacated with either an award of benefits or a remand to a different ALJ. Tr. at 959-60 (Appeals Council Order), 1267-69 (Exceptions) (emphasis omitted). Also on April 22, 2016, the Appeals Council declined to assume jurisdiction over the matter, Tr. at 955-58, making the ALJ's Decision the final decision of the Commissioner. On June 9, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3)[6] by filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes three broad arguments. See Plaintiff's Brief (Doc. No. 20; "Pl.'s Br."), filed November 23, 2016, at 1 (summary of arguments), 11-18 (first argument), 18-23 (second argument), 23-25 (third argument).[7] Plaintiff's arguments all implicate the various medical (and other) opinions of record. Plaintiff's first argument requires

---

[6] Although Plaintiff is seeking review of the Commissioner's decision regarding Plaintiff's claim for SSI (in addition to the claim for DIB), Plaintiff's Complaint does not state she is seeking review under § 1383(c)(3). Section 1383(c)(3), which incorporates § 405(g), grants the court jurisdiction to review these decisions. See 42 U.S.C. § 1383(c)(3).

[7] Specifically, Plaintiff separates the various arguments on appeal into three categories as follows: (1) the ALJ erred in "heavily rely[ing] on state agency opinions that were issued prior to her amended onset date," "assign[ing] great weight to the opinion of a layperson Single Decision Maker [("SDM")]," and "fail[ing] to recognize the significant change in [Plaintiff's] medical status between 2010 and 2015"; (2) the ALJ improperly characterized an examining psychologist's opinion even after this Court rejected that interpretation in the prior appeal, and also the ALJ erred in failing to consider a treating psychiatrist's notes in making the step two finding that Plaintiff's mental impairment is not severe; and (3) the ALJ erred in finding that Plaintiff's sleep disorder did not cause "any limitations in her ability to perform sustained employment." Pl.'s Br. at 1. The undersigned rearranges them for ease of discussion.

-4-

consideration of the ALJ's handling of the state agency non-examining opinion of Olga M. Garcia, M.D.; the (non-medical) opinion of SDM Arnel Caras; and the opinion of treating physician Gloriosa R. Antiporda, M.D. See Pl.'s Br. at 11-18. Plaintiff's second argument requires consideration of the ALJ's handling of the opinion of Kristjan Olafsson, Ph.D. and the treatment notes of Chirag Desai, M.D. See id. at 18-23. And, Plaintiff's third argument also implicates Dr. Antiporda's opinion to a degree. See id. at 23-25. Finally, as part of the challenge to the ALJ's handling of the various opinions, Plaintiff argues the ALJ erred at step two (and in later steps of the sequential inquiry) by finding Plaintiff's mental impairment(s) and sleep disorder(s) are not severe. See id. at 21-25. On January 23, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 21; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective filings, the undersigned finds the Commissioner's final decision is due to be reversed and remanded for further administrative proceedings.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[8] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform

---

[8] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 967-82. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 28, 2011, the amended alleged onset date." Tr. at 967 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: disorders of the spine, disorders of the right knee, obesity, migraine headaches, fibromyalgia, diabetes mellitus and restless leg syndrome." Tr. at 968 (emphasis and citation omitted). At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 971 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she can no more than occasionally climb ramps and stairs, balance, kneel, stoop, crouch, crawl, and climb ropes, ladders, or scaffolds and must avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights.

Tr. at 972 (emphasis omitted). At step four, the ALJ found that Plaintiff "is capable of performing past relevant work as a portrait photographer [because t]his work does not

require performance of work-related activities precluded by [Plaintiff's RFC]." Tr. at 981 (emphasis and citation omitted).

Although not required, the ALJ made alternative findings at step five of the sequential inquiry. Tr. at 981-82. There, the ALJ considered Plaintiff's age ("27 years old . . . on the alleged disability onset date"), education ("a least a high school education and is able to communicate in English"), work experience, and RFC, and relied on the testimony of the VE to find Plaintiff is capable of performing work that exists in significant numbers in the national economy. Tr. at 981-82 (citations omitted). Namely, the ALJ identified representative jobs as "Marker," "Office Helper," and "Cashier II." Tr. at 982. As further alternative representative jobs, the ALJ found that "even if [Plaintiff] were limited to sedentary work with the same non-exertional limitations," Plaintiff could perform the jobs of "Document preparer, microfilm (scanning at present time)," "Charge account clerk," and "Surveillance system monitor." Tr. at 982. The ALJ concluded that Plaintiff "has not been under a disability . . . from March 28, 2011, through the date of th[e D]ecision." Tr. at 982 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

First, the undersigned addresses the ALJ's handling of all of the medical (and other) opinions that are challenged by Plaintiff, categorizing the opinions by whether they address mainly physical or mental limitations. Then, the undersigned addresses the ancillary step two matters argued by Plaintiff.

### A. Medical (and other) Opinions

#### 1. Applicable Law

The Regulations establish a "hierarchy" among medical opinions[9] that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the

---

[9] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-8-

opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician or psychiatrist,[10] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length

---

[10] A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-9-

of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); see also Colon v. Comm'r of Soc. Sec., No. 6:14-cv-378-Orl-DNF, 2015 WL 5599896, at *4 (M.D. Fla. Sept. 22, 2015) (unpublished) (interpreting Winschel's weight-articulation requirement to apply to non-treating opinions); Cranford v. Comm'r of Soc. Sec., No. 6:13-cv-415-Orl-GJK, 2014 WL 1017972, at *4 (M.D. Fla. Mar. 17, 2014) (unpublished) (stating that "[w]eighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability").

"In Florida, a [SDM] is assigned to make the initial disability determination after 'appropriate consultation with a medical or psychological consultant.'" Siverio v. Comm'r of Soc. Sec., 461 F. App'x 869, 871 (11th Cir. 2012) (unpublished) (quoting 20 C.F.R. § 404.906(b)(2)). The designation as a SDM does not carry with it any corresponding medical

credentials. See id. (citing 20 C.F.R. § 404.906(a), (b)(2)). "Indeed, the [Social Security Administration]'s Program Operations Manual System . . . explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that 'SDM-completed forms are not opinion evidence at the appeals level.'" Id. (citation omitted); see also Tabb v. Astrue, No. 11-0287-M, 2012 WL 206155, at *4 (S.D. Ala. Jan. 24, 2012) (unpublished) (noting that "[a]n SDM's assessment is not opinion evidence that an ALJ may rely upon in reaching a disability determination"); Robertson v. Astrue, No. 11-0205-N, 2011 WL 6151548, at *2 n.2 (S.D. Ala. Dec. 12, 2011) (unpublished) (observing that a SDM is not an acceptable medical source and the opinion of a SDM "is not evidence that the ALJ may properly rely upon"); Bolton v. Astrue, No. 3:07-cv-612-J-HTS, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) (unpublished) (recognizing that a SDM is not a medical professional and that a finding from a SDM is not entitled to any weight as a medical opinion); Casey v. Astrue, No. 07-0878-C, 2008 WL 2509030, at *4 n.3 (S.D. Ala. June 19, 2008) (stating that "an RFC assessment completed by a disability specialist is entitled to no weight").

### 2. Opinions Regarding Physical RFC

Plaintiff contends the ALJ erred in assigning great weight to the opinion of non-examining state agency consultant Dr. Garcia and to the SDM, while at the same time rejecting the opinion of treating physician Dr. Antiporda. See Pl.'s Br. at 13-18. Especially in light of her amended onset disability date of March 28, 2011, Plaintiff argues, the reliance on the non-examining opinion that pre-dates the amended onset date was error. See id. at

11-14. Plaintiff also asserts it was error to rely on the opinion of the SDM. See id. Finally, Plaintiff argues that Dr. Antiporda's opinion was improperly discounted. See id. at 16-17.

Defendant counters, "Though Plaintiff is correct that Dr. Garcia's opinion was dated prior to Plaintiff's amended alleged onset date, the evidence from the relevant period, which the ALJ discussed thoroughly in the [D]ecision, continues to support Dr. Garcia's opinion that Plaintiff could perform light work." Def.'s Mem. at 14. As to the reliance on the SDM's opinion, Defendant concedes it was error but argues it was harmless. Id. at 14-15. Finally, regarding Dr. Antiporda's opinion, Defendant argues it was properly discounted "because it was inconsistent with and unsupported by the medical evidence in the record, including Dr. Antiporda's own treatment notes." Id. at 16.

When the prior decision was appealed to this Court, Judge Richardson determined that the ALJ had likely erred in rejecting Dr. Antiporda's opinion without sufficient basis. Tr. at 1139-40. In part, Judge Richardson found so because "one, Dr. Antiporda was the only treating physician to issue opinions regarding [P]laintiff's functioning; two, the state agency doctors did not review the opinions and the rest of the newer evidence . . .; and, three, the state agency doctor and Dr. Olafsson [(the consultative psychologist discussed in the next section)] were not aware of [P]laintiff's diagnosis of narcolepsy because it was submitted after the state agency assessment." Tr. at 1139-40. In light of these matters, as well as the ALJ's erroneous reliance on Plaintiff's noncompliance with treatment, Judge Richardson stated, "[I]t appears that the ALJ did not have good cause for giving little weight to Dr. Antiporda's probative opinions." Tr. at 1140. Judge Richardson also specifically pointed out (presumably for the benefit of the Administration on remand) that his independent review of

-13-

the record revealed the ALJ had "g[iven] great weight to the opinions of a single decision maker at Exhibit 16F." Tr. at 1141.

On remand, regarding the physical RFC opinions, the ALJ first addressed Dr. Antiporda's opinion and wrote in pertinent part:

> Dr. Antiporda completed a physical [RFC] assessment on February 3, 2012 indicating that [Plaintiff] was expected to experience constant interference in performing simple work tasks and was incapable of even low stress jobs. Furthermore, he indicated she was expected to be absent more than four days a month. She was unable to walk the length of a city block, sit, stand or walk more than five minutes at a time and no more than two hours o[f] sitting, standing or walking total in an eight-hour day (Exhibit 36F [located at Tr. at 947-52]).
>
> A letter from Dr. Antiporda dated February 6, 2012 opined that [Plaintiff] was not reliable for full time work of any nature. She could not perform even a sedentary job with a sit-stand option which allowed her to change positions at will because she would need to take frequent breaks to lie down to relieve pain, would likely fall asleep at work due to Phase Delayed Sleep Disorder and side effects from medications and often be off task due to being distracted by her multiple symptoms [i]ncluding anxiety and depression. Her anxiety was not well controlled and she had a difficult time in any social situation and would likely be emotionally unstable in the work place. He also noted her concentration and memory were poor. Dr. Antiporda further opined that he did not believe [Plaintiff] was malingering or exaggerating her symptoms. Her diabetes was not well managed but some of that had to do with lack of funds and resources (Exhibit 37F [located at Tr. at 954]).

Tr. at 979-80.[11] The ALJ then stated that "[b]ased on the USDC Order," Dr. Antiporda's opinion was further reviewed by the ALJ. Tr. at 980. The ALJ discounted Dr. Antiporda's opinion, stating that the doctor "offered little to no rationale for her conclusions[,] many of which appear excessive in light of the minimal objective findings"; Dr. Antiporda's "narrative at exhibit 37F is not corroborated by anything in her treatment records or any abnormal

---

[11] Obviously, Dr. Antiporda's letter touched on Plaintiff's mental impairments. But, Dr. Antiporda's opinion in general was mainly focused on Plaintiff's physical impairments. See Tr. at 947-52, 979-80.

-14-

clinical findings that could reasonably be expected to result in such extreme limitations"; "Dr. Antiporda's treatment records simply document subjective allegations and repeatedly advised [Plaintiff] to exercise which suggests . . . that [Plaintiff] is not nearly as limited as the medical source statement suggests"; and "if [Plaintiff] were this limited, then I would expect that other treating [sic] would have assessed similar limitations, yet they did not." Tr. at 980.

The ALJ then went on regarding the other physical RFC opinions:

I . . . gave great weight to the opinions of the DDS consultant at Exhibits 16F and 22F, who found that [Plaintiff] could perform light work with varying degrees of occasional to frequent postural movements and no concentrated exposure to hazards. This is consistent with the record for the reasons discussed in detail below.

The state agency medical consultant at the initial level found that [Plaintiff] would need to avoid concentrated exposure to vibration for her back and neck pain (Exhibit 16F). However, there is insufficient evidence to support this. [Plaintiff's] back and neck pain is generally mild, and there is no evidence, such as a medical activity restriction, that it would be aggravated by vibration. Furthermore, [Plaintiff] is capable of driving and riding in a car, which amounts to some vibration, and this has not [been] exacerbated by her back and neck conditions.

The state agency medical consultant at the reconsideration level determined that [Plaintiff] could perform light work, with frequent and occasional postural movements, which is generally consistent with the record (Exhibit 22F). However, I have limited [Plaintiff] to occasional postural movements to interpret the evidence in the light most favorable to [Plaintiff]. He limited [Plaintiff] to no concentrated exposure to hazards, which is reflected in the [RFC] assessment.

Tr. at 980.

Exhibit 16F is the opinion of the SDM, Tr. at 548-55, which the ALJ mistakenly believed to be of a medical consultant, Tr. at 980.[12] As noted previously, when Plaintiff's

---

[12] As noted, the ALJ first referred to this opinion as having been authored by a "DDS Consultant" and then as having been authored by a "state agency medical consultant." Tr. at 980.

prior denial was appealed to this Court, Judge Richardson explicitly pointed out the problem of "the ALJ [giving] great weight to the opinions of a single decision maker at Exhibit 16F." Tr. at 1141. In light of Judge Richardson's identification of this problem, one would expect it to have been corrected on remand, but it was not.

Exhibit 22F is the opinion of non-examining state agency consultant Dr. Garcia regarding Plaintiff's physical RFC. Tr. at 583-90. Dr. Garcia rendered this opinion on February 16, 2011. Tr. at 590. A review of the ALJ's Decision shows that this is the only medical opinion regarding the physical RFC to which the ALJ gave great weight, with all others discussed being given little weight. See Tr. at 979-80. Plaintiff amended her alleged onset disability date to shortly after this opinion was rendered, conceding that she was not disabled when Dr. Garcia reviewed the file and authored this opinion. In amending the date during the remand proceedings, Plaintiff argued that her physical condition worsened in March or April 2011. See Tr. at 999-1003.

The ALJ decided Plaintiff's disability status through September 15, 2015, Tr. at 982-93, more than four years after Dr. Garcia's 2011 opinion. During that time, as Plaintiff details in her brief, see Pl.'s Br. at 14-15, Plaintiff had an accident that caused disc herniation, as well as other physical problems. Given Plaintiff's amended onset date, as well as the voluminous administrative transcript containing hundreds of pages of medical records post-dating Dr. Garcia's opinion, this opinion is of questionable (if any) value. To rely almost exclusively on it and the opinion of the SDM, to the exclusion of Dr. Antiporda's treating opinion, was error necessitating reversal and remand. In fact, although the ALJ provided more detail for discounting Dr. Antiporda's opinion this time, the opinion evidence of record

on which the ALJ relied for the physical RFC is in no better position as it was when Judge Richardson reversed and remanded the matter. Given the circumstances, reversal is required for reconsideration of the physical RFC opinions and evidence. On remand, at the very least, an updated consultative physical examination will be necessary.[13]

### 3. Mental RFC Opinions

Plaintiff argues the ALJ erred in discounting consultative psychologist Dr. Olafsson's opinion because Judge Richardson rejected the reasoning initially provided by the ALJ for doing so, and the ALJ relied on the same reason on remand. Pl.'s Br. at 18-23. Further, Plaintiff contends the ALJ erred in failing to discuss the treatment notes (and imbedded opinion) of Dr. Desai, who treated Plaintiff in 2012 and 2013. Id.; see Tr. at 1608-21 (Dr. Desai's notes); Tr. at 1623-33 (some duplicates).

In defending the ALJ's discounting of Dr. Olafsson's opinion, Defendant does not recognize or address Plaintiff's specific argument that the ALJ's reasoning is the same as that which was rejected by Judge Richardson. See Def.'s Mem. at 7-9. Regarding Dr. Desai's notes, Defendant concedes that "the ALJ did not specifically cite to treatment notes from Dr. Desai," but argues that "an ALJ is not required to discuss each piece of evidence

---

[13] Plaintiff argues that the ALJ should have ordered an updated consultative examination given the circumstances. Pl.'s Br. at 16. The undersigned agrees. "It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id. (citing 20 C.F.R. § 416.912(a), (c)). While "[t]he [ALJ] has a duty to develop the record where appropriate," the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram, 496 F.3d at 1269 (citing Doughty, 245 F.3d at 1281). Here, as explained above, while the voluminous administrative transcsript has no shortage of medical evidence, the opinions regarding Plaintiff's physical RFC are scant and were otherwise rejected by the ALJ.

-17-

individually, provided he considered Plaintiff's condition as a whole." Id. at 9 (citation omitted).

The ALJ erred in evaluating Dr. Olafsson's opinion and in failing to evaluate Dr. Desai's notes. As to Dr. Olafsson's opinion, Judge Richardson previously found as follows:

> Although Dr. Olafsson noted that the cognitive screening did not appear valid, due to subotimal efforts and apparent exaggeration of symptoms, the doctor also noted that [P]laintiff's demeanor and responsiveness to questions was cooperative, and her manner of relating social skills and overall presentation were adequate.
> 
> . . .
> 
> In addition, despite diagnosing malingering, Dr. Olafsson recommended that [P]laintiff continue with her psychiatric medication management as provided by her primary care physician, and seek counseling services, as well as develop improved coping and relaxation skills.
> 
> . . .
> 
> Therefore, the ALJ's finding that [P]laintiff's presentation was tantamount to a failure to participate in Dr. Olafsson's examination appears to be unsupported by substantial evidence.

Tr. at 1139 (referring to Tr. at 510, 512, 513). Yet, on remand, the ALJ repeated the "find[ing] that [Plaintiff's] presentation [at Dr. Olafsson's examination] is tantamount to a failure to participat[e in] a consultative evaluation." Tr. at 979. Whether intentional or not, this finding disregards Judge Richardson's previous holding and must be corrected.

The ALJ's failure to discuss the treatment notes of Dr. Desai is also error necessitating remand for consideration of them. Among other things, Dr. Desai (whose treatment occurred during the relevant period) noted complaints of "anxiety, insomnia and irritability" and diagnosed "[p]anic disorder without agoraphobia" with "[m]ood [disorder not otherwise specified and i]nsomnia." Tr. at 1609-10; see also Tr. at 1613-14, 1615, 1617. Dr. Desai prescribed various medications "to address depression and anxiety" and

-18-

encouraged Plaintiff to follow up "with her sleep specialist provider who . . . would be better equipped to address her chronic sleep issues." Tr. at 1610; see also Tr. at 1615 (discussing medication issues). In short, Dr. Desai's notes, diagnoses, and opinions are probative of whether Plaintiff has a mental impairment or sleep disorder that affects her ability to work. Thus, on remand, the ALJ shall ensure consideration of these notes.

**B. Ancillary Arguments Raised by Plaintiff**

Plaintiff's ancillary arguments focus on the ALJ's findings at step two that Plaintiff does not have a severe mental impairment and that she does not have a severe sleep disorder. Pl.'s Br. at 21-25. On remand, reconsideration of the various opinions of record will greatly inform the ALJ's step two findings, particularly as to these alleged impairments. Thus, on remand, the ALJ shall reconsider at step two whether Plaintiff has a severe mental impairment or sleep disorder, and reconsider the RFC as appropriate.

## V. Conclusion

For the foregoing reasons, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

>   (A)    Reevaluate the medical (and other) opinions—including those of Olga M. Garcia, M.D.; SDM Arnel Caras; Gloriosa R. Antiporda, M.D.; Kristjan Olafsson, Ph.D.; and the treatment notes of Chirag Desai, M.D.—stating with particularity the weight assigned and the reasons for that weight;
>
>   (B)    Obtain an updated physical consultative examination;

(C) Reconsider at step two whether Plaintiff has severe mental impairments or sleeping disorders, and reconsider the RFC as appropriate; and

(D) Take such other action as may be necessary to resolve this matter properly.

2. The Clerk is further directed to close the file.

3. In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on September 26, 2017.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record